## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| CHAD CONUS, ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| v. ) | **Case No. 2:11-cv-02149-JAR** |
| ) | |
| WATSON'S OF KANSAS CITY, INC. ) | |
| d/b/a FAMILY LEISURE, ) | |
| ) | |
| **Defendant.** ) | |

## MEMORANDUM AND ORDER

Plaintiff Chad Conus filed this action against Defendant Family Leisure for wage violations and retaliation under the Fair Labor Standards Act ("FLSA") and for wrongful termination under Kansas common law.  The Court granted Defendant's motion to dismiss Plaintiff's state law claim; and all that remains are Plaintiff's federal claims.  This matter currently comes before the Court on Defendant's Motion for Partial Summary Judgment (Doc. 49), in which Defendant seeks summary judgment on Plaintiff's retaliation claim.  The motion also asks that if the Court grants summary judgment on the retaliation claim, the Court also enter judgment on Plaintiff's claim for attorneys' fees.  The motion is fully briefed, and the Court is prepared to rule.  As explained below, the Court denies Defendant's motion for summary judgment on the retaliation claim because genuine issues of material fact remain as to whether retaliation played a part in the decision to terminate Plaintiff's employment, and as a result, the Court also denies Defendant's motion for summary judgment on Plaintiff's claim for attorneys' fees.

## I.      Summary Judgment Standard

Summary judgment is appropriate if the moving party demonstrates that there is "no genuine dispute as to any material fact" and that it is "entitled to a judgment as a matter of law."[1] In applying this standard, courts view the evidence and all reasonable inferences therefrom in the light most favorable to the nonmoving party.[2]  A fact is "material" if, under the applicable substantive law, it is "essential to the proper disposition of the claim."[3]  An issue of fact is "genuine" if "there is sufficient evidence on each side so that a rational trier of fact could resolve the issue either way."[4]

The moving party initially must show the absence of a genuine issue of material fact and entitlement to judgment as a matter of law.[5]  In attempting to meet this standard, a movant that does not bear the ultimate burden of persuasion at trial need not negate the other party's claim; rather, the movant need simply point out to the court a lack of evidence for the other party on an essential element of that party's claim.[6]

Once the movant has met this initial burden, the burden shifts to the nonmoving party to "set forth specific facts showing that there is a genuine issue for trial."[7]  The nonmoving party

---

[1]Fed. R. Civ. P. 56(c).

[2]*Spaulding v. United Transp. Union*, 279 F.3d 901, 904 (10th Cir. 2002).

[3]*Wright ex rel. Trust Co. of Kan. v. Abbott Labs., Inc.*, 259 F.3d 1226, 1231–32 (10th Cir. 2001) (citing *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998)).

[4]*Adler*, 144 F.3d at 670 (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

[5]*Spaulding*, 279 F.3d at 904 (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986)).

[6]*Adams v. Am. Guar. & Liab. Ins. Co.*, 233 F.3d 1242, 1246 (10th Cir. 2000) (citing *Adler*, 144 F.3d at 671).

[7]*Anderson*, 477 U.S. at 256; *Celotex*, 477 U.S. at 324; *Spaulding*, 279 F.3d at 904 (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

may not simply rest upon its pleadings to satisfy its burden.[8]  Rather, the nonmoving party must "set forth specific facts that would be admissible in evidence in the event of trial from which a rational trier of fact could find for the nonmovant."[9]  To accomplish this, the facts "must be identified by reference to an affidavit, a deposition transcript, or a specific exhibit incorporated therein."[10]  Rule 56(c)(4) provides that opposing affidavits must be made on personal knowledge and shall set forth such facts as would be admissible in evidence.[11]  The non-moving party cannot avoid summary judgment by repeating conclusory opinions, allegations unsupported by specific facts, or speculation.[12] "

Finally, summary judgment is not a "disfavored procedural shortcut"; on the contrary, it is an important procedure "designed to secure the just, speedy and inexpensive determination of every action."[13]  In responding to a motion for summary judgment, "a party cannot rest on ignorance of facts, on speculation, or on suspicion and may not escape summary judgment in the mere hope that something will turn up at trial."[14]

## II.   Uncontroverted Facts

For the purposes of Defendant's Motion for Summary Judgment, the following material

---

[8]*Anderson*, 477 U.S. at 256; *accord Eck v. Parke, Davis & Co.*, 256 F.3d 1013, 1017 (10th Cir. 2001).

[9]*Mitchell v. City of Moore, Okla.*, 218 F.3d 1190, 1197–98 (10th Cir. 2000) (quoting *Adler*, 144 F.3d at 671).

[10]*Adams*, 233 F.3d at 1246.

[11]Fed. R. Civ. P. 56(c)(4).

[12]*Id.*; *Argo v. Blue Cross & Blue Shield of Kan., Inc.*, 452 F.3d 1193, 1199 (10th Cir. 2006) (citation omitted).

[13]*Celotex*, 477 U.S. at 327 (quoting Fed. R. Civ. P. 1).

[14]*Conaway v. Smith*, 853 F.2d 789, 794 (10th Cir. 1988).

facts are uncontroverted, deemed admitted, or, where disputed, viewed in the light most favorable to Plaintiff.

Plaintiff Chad Conus began working for Defendant Family Leisure around November 2005 and worked there until Defendant fired him on April 15, 2010.  Family Leisure is a retail business that sells consumer products such as spas, tanning beds, pool tables, patio furniture and other recreational products.  Plaintiff worked as a salesman on Defendant's retail floor, earning commissions on his sales.  During his employment, other employees observed Plaintiff asleep at work on the retail floor, saw him arriving late to work on several occasions, and observed him texting at work.  Other employees, however, also slept on the retail floor while waiting for customers to arrive and used their phones at work.  Additionally, Defendant did not have a prohibition against using a cell phone at work.

As a sales employee, Defendant paid Plaintiff a bi-weekly advance/draw of $700 against his commissions from his sales.  During his employment, Plaintiff had the highest single day sales in 2007, the highest 3-day Memorial Day weekend sales in May 2008, the highest monthly sales in June 2007, and the highest yearly sales in 2007.  By 2010, however, Plaintiff's sales numbers had dropped, as did many employees' sales numbers.  Overall sales had begun to drop in 2007 and 2008 because of the economy.

On February 11, 2010, Dennis White, Family Leisure's owner, met with Plaintiff to discuss his bi-weekly draw.  Because of Plaintiff's recent low sales numbers, White informed Plaintiff that his sales numbers had not been adequate to cover his bi-weekly draw, leaving him "in the hole" for $1,821.  White explained that Plaintiff was not the only employee in that position, but White explained that Plaintiff would not receive any future advances/draws until he

repaid in full his past advances/draws.

Defendant did not pay Plaintiff any advances/draws from February 26, 2010, forward. When Defendant stopped paying Plaintiff his advances/draws, Defendant also stopped deducting Plaintiff's child support payments from his check to send to the State of Kansas.  After speaking with the Child Support Division for the Kansas Department of Social and Rehabilitation Services about unpaid child support, Plaintiff decided to call the Kansas Department of Labor and the United States Department of Labor to report wage and hour violations concerning the manner in which Defendant paid Plaintiff and other employees.  While Plaintiff estimated that his first contact with the Kansas Department of Labor and United States Department of Labor occurred near the end of March, Plaintiff's cell-phone records and the records of the Departments of Labor indicate contact occurred on April 1, 2010.

Plaintiff informed a number of other employees that he had contacted the Departments of Labor, including David Wilhouse, Dave Crysler, Phillip VanSchoonhoven, Vicki Jones, and possibly Nathan Chipman.  The other employees had conversations about Plaintiff's wage complaints.  Plaintiff did not personally inform White about his wage complaints.

On April 15, 2010, White called Plaintiff before work and left a message asking Plaintiff to call him back.  When Plaintiff called him back, White informed him that he was fired.  White did not mention anything about the Department of Labor in the phone conversation, nor did he mention Plaintiff's wage complaints.  The contents of the rest of the conversation are controverted.

## III.    Discussion

### A.    Retaliation Claim

Under the FLSA, it is unlawful "to discharge or in any other manner discriminate against any employee because such employee has filed any complaint or instituted or caused to be instituted any proceeding under or related to the FLSA."[15]  A plaintiff suing under the FLSA for retaliation must establish that retaliation played a part in the adverse employment decision.[16]  In this case, Plaintiff has chosen to satisfy his burden under burden-shifting scheme articulated in *McDonnell Douglas Corp. v. Green*.[17]  Under *McDonnell Douglas*, a plaintiff must first establish a prima facie case of retaliation for engaging in activity protected by the FLSA.[18]  To do so, a plaintiff must show that: "(1) he or she engaged in activity protected by the FLSA; (2) he or she suffered an adverse action by the employer subsequent to or contemporaneous with such employee activity; and (3) a causal connection existed between the employee's activity and the employer's adverse action."[19]  If the plaintiff establishes the prima facie case of retaliation, the burden shifts to the defendant employer to demonstrate a legitimate, non-retaliatory reason for the plaintiff's termination.[20]  If the employer provides a valid reason for the termination, the burden shifts back to the plaintiff to show that "a genuine dispute of material fact as to whether the employer's proffered reason for the challenged action is pretextual."[21]  Here, Defendant does

---

[15]29 U.S.C. § 215(a)(3).

[16]*Twigg v. Hawker Beechcraft Corp.*, 659 F.3d 987, 998 (10th Cir. 2011).

[17]*See McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). Neither party has made any reference to the direct/"mixed motives" approach, recently clarified by the Tenth Circuit in *Twigg*.  *See* 659 F.3d at 999–1000.

[18]*Conner v. Schnuck Markets, Inc.*, 121 F.3d 1390, 1394 (10th Cir. 1997) (quoting *McDonnell Douglas Corp.*, 411 U.S. 792).

[19]*Id.*

[20]*Id.*

[21]*Id.* (quoting *Morgan v. Hilti, Inc.*, 108 F.3d 1319, 1323 (10th Cir. 1997)).

6

not dispute that Plaintiff was engaged in a protected activity, nor does it dispute that Plaintiff suffered an adverse action by the employer.  The parties instead focus on whether Plaintiff has met the third element of his prima facie case and whether Plaintiff has met his burden to prove pretext.

### 1.      Prima Facie Case

Focusing on the prima facie case, Defendant first argues that Plaintiff cannot prove a causal connection between the protected activity and the termination.  Plaintiff cites to the temporal proximity between his wage complaint and his termination to prove the causal connection.  A plaintiff "may establish the causal connection by proffering 'evidence of circumstances that justify an inference of retaliatory motive, such as protected conduct closely followed by adverse action.'"[22]  The Tenth Circuit has found that a period of two months and one week between the protected activity and the adverse employment action is sufficient to support a prima facie case of retaliation.[23]  A two-week time period between the protected activity and the adverse employment action is therefore generally sufficient to establish a causal connection. Here, Plaintiff called the Department of Labor to report wage violations at the end of March or the beginning of April in 2010, and Defendant terminated Plaintiff's employment about two weeks later on April 15, 2010.  Plaintiff has thus established a temporal proximity between his protected activity and adverse employment action that would normally suffice to establish a

---

[22]*Annett v. Univ. of Kan.*, 371 F.3d 1233, 1239–40 (10th Cir. 2004) (quoting *Bullington v. United Air Lines, Inc.*, 186 F.3d 1301, 1320 (10th Cir. 1999)).

[23]*Anderson v. Coors Brewing Co.*, 181 F.3d 1171, 1179 (10th Cir. 1999); *see also Ramirez v. Okla. Dep't of Mental Health*, 41 F.3d 584, 596 (10th Cir. 1994) (finding that a period of one and one-half months was sufficient to establish the causal connection), *overruled on other grounds by Ellis v. Univ. of Kan. Med. Ctr.*, 163 F.3d 1186, 1194–97 (10th Cir. 1998).

causal connection.  Nonetheless, Defendant argues that Plaintiff's evidence of temporal proximity is insufficient because he has no evidence to show that Dennis White, the supervisor who made the decision to terminate his employment, knew he had made wage complaints to the Department of Labor.

To prove a causal connection between the adverse employment action and the protected activity, a plaintiff must show that the individual who took the adverse action against the plaintiff knew about the employee's protected activity.[24]  An employer's retaliation against an employee for making a complaint under the FLSA cannot occur unless the employer knows the employee made a complaint.[25]  Here, White, as the sole decisionmaker, fired Plaintiff. Defendant claims that White was not aware that Plaintiff had made any complaint to the Departments of Labor, but Defendant incorrectly states that Plaintiff has no evidence to support his assertion that White did know about the complaint at the time of his termination.  Plaintiff offers his own testimony to show that White was aware of the complaint at the time he fired Plaintiff.  Plaintiff testified at his deposition that during the phone conversation when White fired Plaintiff, White initially said that he was firing Plaintiff because of his low sales numbers, but when questioned further by Plaintiff, White admitted that he decided to fire Plaintiff because of Plaintiff's "conversations with other employees."  This statement, when combined with Plaintiff's evidence showing that Plaintiff had been discussing his wage complaints with coworkers, allows Plaintiff to meet his burden of providing evidence of White's knowledge of the wage complaints.  And, when combined with his evidence of the temporal proximity between

---

[24]*Williams v. Rice*, 983 F.2d 177, 181 (10th Cir. 1993).

[25]*Peterson v. Utah Dept. of Corrections*, 301 F.3d 1182 (10th Cir. 2002).

the protected activity and the adverse employment action, the evidence of White's knowledge allows Plaintiff to meet his non-onerous burden of proving his prima facie case.

Still, Defendant argues that Plaintiff's evidence concerning White's statements lacks credibility.  Defendant's argument is unpersuasive.  The Court does not determine credibility at the summary judgment stage and must take the evidence in the light most favorable to nonmoving party.[26]  A jury may to choose to discredit Plaintiff's evidence, but that consideration is irrelevant to the Court at the summary judgment stage.  Thus, Plaintiff has established a prima facie case of retaliation under the FLSA, shifting the burden to Defendant to demonstrate a legitimate reason for Plaintiff's termination.

### 2.      Proffered Non-Retaliatory Reasons for Termination

Defendant has articulated valid, non-retaliatory reasons for termination.  Defendant explains that it fired Plaintiff for a number of reasons, including that he slept at work, he arrived to work late on a number of occasions and did not inform his supervisors, he used his personal cell phone at work, and his performance had deteriorated and his sales numbers had begun to drop, with very low sales numbers in the month before his termination.  Defendant has thus met its burden.  As a result, to avoid summary judgment, Plaintiff must produce evidence that White decided to terminate his employment in retaliation for his protected FLSA activity, "either through the use of direct evidence or by showing that [Defendant's] proffered non-retaliatory reasons for terminating him [are] pretextual."[27]

---

[26]*Plotke v. White*, 405 F.3d 1092, 1103 (10th Cir. 2005) (citing *Randle v. City of Aurora*, 69 F.3d 441, 453 (10th Cir. 1995)).

[27]*Conner v. Schnuck Markets, Inc.*, 121 F.3d 1390, 1396 (10th Cir. 1997) (citing *Randle*, 69 F.3d at 451–53).

### 3.      Pretext

To show pretext, Plaintiff can present evidence that reveals "'such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them unworthy of credence.'"[28]  "The plaintiff's evidence can also allow for an inference that the 'employer's proffered non-discriminatory reasons [were] either a *post hoc* fabrication or otherwise did not actually motivate the employment action (that is, the proffered reason is a pretext).'"[29]  When assessing whether the plaintiff has made the appropriate showing under this standard, the Court must consider the evidence as a whole and draw all inferences in favor of the plaintiff.[30]  Plaintiff advances several arguments to show that Defendant's proffered reasons are pretextual, including the temporal proximity between his wage complaint to the Departments of Labor and his termination, and the inconsistencies surrounding the reasons for his termination.

Plaintiff's first argument is that the short amount of time between the protected activity and the termination demonstrates pretext.  As explained above, Plaintiff made his complaint to the Departments of Labor, and about two weeks later, Defendant terminated his employment. The two-week time difference between the protected activity and the adverse employment action allowed Plaintiff to meet his burden for the prima facie case, but on its own does not allow Plaintiff to prove pretext.[31]  Thus, the Court must determine whether Plaintiff's evidence of

---

[28]*Plotke*, 405 F.3d at 1102 (quoting *Morgan v. Hilto, Inc.*, 108 F.3d 1319, 1323 (10th Cir. 1997)).

[29]*Id.* at 102–03 (quoting *Fuentez v. Perskie*, 32 F.3d 759, 764 (3d Cir. 1994)).

[30]*Danville v. Regional Lab Corp.*, 292 F.3d 1246, 1250 (10th Cir. 2002).

[31]*Annett v. Univ. of Kan.*, 371 F.3d 1233, 1240 (10th Cir. 2004) (citing *Pastran v. K-Mart Corp.*, 210 F.3d 1201, 1206 (10th Cir. 2000)).

temporal proximity combined with other evidence demonstrates "'such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions" in Defendant's proffered reasons for his termination such that a "reasonable factfinder could rationally find them unworthy of credence.'"[32]

Plaintiff next points to a number of inconsistencies and contradictions to show pretext, most of which relate to the reason Defendant fired Plaintiff.  Defendant has listed numerous reasons for its decision to fire Plaintiff, but Plaintiff has evidence to show that White only mentioned one of these reasons to Plaintiff at the time he fired him—low sales numbers.  And Plaintiff's evidence shows that during that conversation White admitted the low sales numbers were not the real reason for his termination.  Plaintiff testified that at first, White told Plaintiff that he fired him because his sales numbers were low.  When Plaintiff reminded White that he had high sales numbers for the previous weekend, White cited a different reason for the termination: Plaintiff's "conversations with other employees."  As Plaintiff had recently lodged his wage complaint and had discussed it with fellow employees, Plaintiff understood White to mean that he decided to fire Plaintiff for his wage complaint.  White's statement thus directly touches on retaliatory animus.  This contradictory evidence contributes to a finding of pretext, and the Court notes, such a statement on its own may suffice to allow a jury to infer that all of Defendant's proffered reasons are pretextual.  Nonetheless, Plaintiff also has evidence to suggest that some of Defendant's other proffered reasons are pretextual.

Plaintiff, for example, offered additional evidence to discredit Defendant's claim that Plaintiff's conduct of sleeping at work motivated White's decision to fire him.  Plaintiff stated in

---

[32]*Id.* at 1241 (quoting *Anderson v. Coors Brewing Co.*, 181 F.3d 1171, 1179 (10th Cir. 1999)).

his affidavit that he had seen Gary Floyd, Vicki Jones, Cecil "J.R." Sampson, Steve Seminoff,

Janet Cooper, and Phillip Vanschoonhoven sleeping on the retail floor.  He also submitted a

photo, which he asserts shows Floyd, the sales manager, sleeping in the showroom.  None of

these employees, however, have been fired for this behavior.  Given Defendant's treatment of

other employees who slept at work, a jury may conclude that Defendant's assertion that it fired

Plaintiff because he slept at work is pretextual.

    Further, Plaintiff argues that Defendant's claim that his cell phone use justified

termination is implausible because that conduct was not prohibited.  Indeed, White testified at

his deposition that the company's written policy does not ban the use of personal cell phones at

work and instead merely states that employees should exercise good judgment in limiting the

length and frequency of their personal calls.  As such, a jury could infer that this reason for

termination is merely after-the-fact justification, which was unrelated to the actual motivation for

White's decision to fire Plaintiff.

    Plaintiff has also cited inconsistencies surrounding the issue of when White made the

decision to fire Plaintiff.  Conflicting evidence regarding the point in time at which an employer

made the decision to terminate an employee can contribute to the showing of pretext.[33]  White

testified that he did not make the decision to terminate Plaintiff until waiting for Plaintiff to

return his call on the morning of April 15th and did not believe he told anyone about his decision

before firing Plaintiff.  White testified that he made the decision at that time because it was

already about 9:10 or 9:15 in the morning and Plaintiff was 40 minutes away.  White thus knew

Plaintiff would not make it to work on time because he needed to be to work by 9:30 that

---

[33]*Plotke*, 405 F.3d at 1103.

morning, and his inevitable tardiness that day motivated White to fire Plaintiff that morning. Plaintiff, however, has evidence to show that the call actually occurred at around 8:30 a.m. and not so close to the start time that Plaintiff would have necessarily been late that day. This evidence tends to undercut White's explanation for why and when he decided to fire Plaintiff. Further, Plaintiff has evidence to suggest that, contrary to White's testimony, White shared his decision to fire Plaintiff with other employees that morning before terminating Plaintiff. Breedlove testified that White had a discussion with him about his intent to fire Plaintiff sometime on the morning of April 15th. Again, when viewed in the light most favorable to Plaintiff, this evidence controverts White's testimony about the circumstances surrounding Plaintiff's termination. Thus, the evidence of inconsistencies as to when White made the decision to fire Plaintiff also contribute to a finding that there is a genuine issue of material fact as to whether Defendant's proffered reasons are pretextual.

The fact that Plaintiff has offered evidence to discredit many of Defendant's numerous reasons for White's decision to terminate Plaintiff's employment suggests that a reasonable jury could find pretext. A plaintiff that casts substantial doubt on many of the employer's proffered reasons for termination could cause a jury to reasonably conclude that the employer lacks credibility.[34] Indeed, "[a]n employer's strategy of simply tossing out a number of reasons . . . in the hope that one of them will 'stick' could easily backfire. . . . [A] multitude of suspicious explanations may itself suggest that the employer's investigatory process was so questionable that any application of the 'honest belief' rule is inappropriate."[35] Considering the conflicting

---

[34]*Id.*

[35]*Id.* (quoting *Tyler v. RE/MAX Mountain States, Inc.*, 232 F.3d 808, 814 (10th Cir. 2000)) (internal quotation marks omitted).

evidence concerning many of the proffered reasons, especially evidence of White's statements that he fired Plaintiff for his conversation with other employees, conflicting evidence regarding when White made his decision to fire Plaintiff, and evidence of the temporal proximity between the protected activity and the termination, the Court determines that Plaintiff has established genuine issues of fact as to pretext.

In sum, the Court finds that Plaintiff established his prima facie case of retaliation and met his burden to produce evidence to "allow for an inference that the 'employer's proffered non-discriminatory reasons [were] either a *post hoc* fabrication or otherwise did not actually motivate the employment action (that is, the proffered reason is a pretext)."[36]   Thus, Plaintiff meets the requirements of the *McDonnell Douglas* burden-shifting framework, which precludes the entry of summary judgment.  As a result, the Court denies Defendant's motion for summary judgment on Plaintiff's retaliation claim.

**B.      Attorneys' Fees Claim**

Defendant also asks the Court to enter summary judgment on Plaintiff's claim for attorneys' fees if the Court grants summary judgment on the retaliation claims.  Because the Court denies Defendant's summary judgment motion for the retaliation claim, the Court also denies Defendant's motion for summary judgment on the attorneys' fees claim.

**IT THEREFORE ORDERED BY THE COURT** that Defendant's Motion for Partial Summary Judgment (Doc. 49) is **DENIED**.

**IT IS SO ORDERED**.

Dated: <u>May 29, 2012</u>

---

[36]*See id.* at 1102–03 (quoting *Fuentez v. Perskie*, 32 F.3d 759, 764 (3d Cir. 1994)).

 S/ Julie A. Robinson
JULIE A. ROBINSON
UNITED STATES DISTRICT JUDGE